NORMAN W. ELLEGOOD, RESPONDENT, v. BRASHEAR FREIGHT LINES, INCORPORATED, A CORPORATION, APPELLANT.—162 S. W. (2d) 628.

St. Louis Court of Appeals. Opinion filed June 2, 1942.

*S. C. Rogers* for appellant.

No attorney for respondent.

ANDERSON, J.—This is an action for damages for personal injuries sustained by Norman W. Ellegood, while employed on the premises of the appellant, Brashear Freight Lines, Inc. The suit was filed against appellant and Harold Curtis, but at the close of plaintiff's case the court directed a verdict for defendant Curtis, and the cause proceeded against appellant as the sole remaining defendant. The trial resulted in a verdict and judgment for plaintiff.

The alleged accident occurred on August 31, 1936. At that time, and for some time prior thereto, plaintiff was employed by defendant Curtis to drive a tractor truck. On some date prior to the accident, Curtis entered into an agreement with appellant, whereby the services of plaintiff and the truck were furnished to appellant for a consideration. Plaintiff continued to be paid his wages by defendant Curtis, but was engaged wholly in the business of appellant, which was that of hauling and carrying freight by means of motor trucks and trailers.

At the trial plaintiff gave the following testimony:

"Q. From whom did you get orders as to where you were to deliver trailers? A. Buster Brashear or the dispatcher.

"Q. They were among the working force of Brashear Freight Lines, Incorporated? A. Yes, sir.

"Q. Now, who told you to take orders from these people, if anybody? A. Buster did.

"Q. Buster told you to take them from the foreman? A. Buster Brashear told me that I would work directly under the dispatcher.

"Q. What was the dispatcher's name on August 31st, 1936? A. I don't remember what that fellow's name was.

"Q. Now, at the time you were employed by Mr. Curtis, or they object to the word employment, that you alleged you were employed and he gave you a tractor, he told you to report to the Brashear's? A. Yes, sir.

"Q. To whom did he tell you to report down there, anybody in particular? A. He went down with me. Mr. Curtis went with me the first day I was down there.

"Q. How did you get in the place? A. I was introduced to Buster Brashear, by Mr. Curtis.

"Q. What did Mr. Curtis say to Mr. Brashear? A. Mr. Curtis told Mr. Brashear, 'Here is the man that will drive that Indiana truck for you.'

"Q. What did Brashear say? A. He says, 'All right,' and I went to work that day. That same morning and, Mr. Curtis left.

. . . . .

"Q. And you just took the tractor and kept it at your house, didn't you, sometimes a week at a time before you would see Mr. Curtis? A. As a general rule I never saw Mr. Curtis only every week.

"Q. Where did you get your gas and oil? A. At Brashear's."

The evidence shows that Buster Brashear is vice-president and operating manager of Brashear Freight Lines, Inc.

On August 31, 1936, plaintiff received directions from appellant to haul a trailer loaded with scrap copper wire from the appellant's yard at 527 South Theresa, in the City of St. Louis, to the plant of Lewin Metal Works in East St. Louis, Illinois. The trailer in question had a capacity of 22,000 pounds, but was, on this occasion, according to plaintiff's evidence, loaded with 39,000 pounds of metal. Plaintiff at the time was unaware of the overloading of the trailer. He backed his truck into the trailer, and made a coupling by means of a kingpin on the foot of the trailer, which kingpin fits into a slot in the fifth wheel on the back end of the truck or tractor. When properly in place the kingpin is locked by a locking device, which fits into a collar or groove near the bottom of the kingpin. On this particular occasion the kingpin was chipped below the groove at the bottom end, and when the truck was moved forward the kingpin pulled out and the trailer became disconnected, with the result that the full force of the weight of the trailer came down on the rear end of the truck or tractor, causing the front end of the truck to be lifted off the ground and then dropped with great force, throwing plaintiff around in the cab of the truck, and causing the injuries for which he sued.

The petition charged the following negligence: (1) That defendants negligently allowed the tractor truck and trailer to become defective, unsafe, and out of order, in that the fifth wheel was cracked, broken, and defective; (2) that the kingpin was broken off; (3) that said trailer was loaded beyond its capacity so that it was impossible to move it out of its parking place, all of which facts the defendant knew, or by the exercise of ordinary care could have known; and, (4) that defendant Brashear Freight Lines, Inc., directed and ordered plaintiff into a hidden danger known to it, but unknown to plaintiff, without warning plaintiff thereof.

Appellant answered with a plea of the general issue, assumption of risk, contributory negligence, and a further plea that at the time of the alleged accident to plaintiff, appellant was subject to the provisions of the Missouri Workmen's Compensation Act, and that whatever rights plaintiff had were under said act.

After the accident plaintiff reported to the office of Dr. Pierce J. Reilly for medical attention. He then took the tractor to appellant's premises, made out an accident report to Brashear, and went home, where he remained for two days. He then reported back to work, and worked for about five months, driving the same tractor. During those five months his arm bothered him, and on several occasions he requested Mr. Brashear to send him to a doctor. On one occasion Mr. Brashear told plaintiff that he was working for Curtis, and on another occasion told him that he was working for him, but that he (Brashear) was not responsible, and that plaintiff should get the doctor the best way he could. Finally, on February 2, 1937, Mr. Brashear said to him, ". . . . you are always complaining, you are fired, I don't need you any more. Go on home with your truck." Plaintiff then left, taking the tractor to Mr. Curtis.

The evidence further shows that on September 15, 1936, plaintiff filed a claim for compensation against appellant herein, with the Missouri Workmen's Compensation Commission.

At the conclusion of the case, appellant requested the court to give and read to the jury an instruction in the nature of a demurrer to the evidence. This request the court denied, and the denial forms the basis of appellant's first assignment of error in this court.

In support of this assignment, appellant contends that plaintiff was an employee of Curtis, an independent contractor, and that since the alleged accident happened on appellant's premises, in the usual course of its business, plaintiff's only remedy was that given to him as a statutory employee under Section 3698, Revised Statutes Missouri, 1939. In this appellant is in error. In the case at bar Curtis, who was the general employer of plaintiff, did not stand in the relation of an independent contractor to appellant. Brashear Truck Lines, Inc., did not employ Curtis to do hauling for it. It subcontracted no part of the work to Curtis, but merely procured additional facilities from him to perform its business. Under such circumstances, plaintiff was not a statutory employee under Section 3698.

The next question presented is whether or not plaintiff was an employee of Brashear Truck Lines, Inc., within the meaning of the Missouri Workmen's Compensation Act. This involves a construction of Sections 3694 and 3695, Revised Statutes Missouri, 1939, and an examination of the record to ascertain if sufficient facts are developed to bring plaintiff within the operation of the borrowed servant doctrine. If plaintiff was a borrowed servant at the time of the accident, within the meaning of that doctrine, then the remedy is under

the Workmen's Compensation Act, and the demurrer was not properly ruled.

Our statute undertakes to define the terms "employer" and "employee." Section 3694, Revised Statutes Missouri, 1939, provides that the word "employer" shall be construed to mean: "(a) Every person, partnership, association, corporation, trustee, receiver . . . and every other person . . . using the service of another for pay."

Section 3695(a) provides that the word "employee" shall be construed to mean "every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election."

Under the facts of the instant case, was plaintiff an employee of Brashear Truck Lines, Inc., within the meaning of that term as defined by the act? The act says the word "employee" shall be construed to mean every person in the service of any employer as defined under any contract of hire, express or implied. If the definition stopped at this point, it would be clear that plaintiff could not come within it. There was no contract of service, express or implied, between the plaintiff and Brashear Truck Lines, Inc., the only contract of service shown by the evidence being between plaintiff and Curtis, his general employer. But, the statutory definition goes further. It says that one may be an employee if he is in the service of another "under any appointment or election."

Our Supreme Court, in construing this provision of the act, has given it a broad meaning, and has held that it should be so construed that any doubt presented in any case should be resolved in favor of the employee being covered by the act. In Pruitt v. Harker, 328 Mo. 1200, 43 S. W. (2d) 769, claimant, a minor working for his father, was held to be an employee within the meaning of the act and entitled to compensation under the act, though he drew no wages and performed his service under no contract, express or implied. In that case, the Court, speaking through Sturgis, C., said:

"Defendant next contends that plaintiff was not an employee even of William Pruitt, one of the independent contractors doing this work for the defendant, and consequently was not directly or indirectly an employee of the defendant. This contention is based on the fact that plaintiff was at the time of his injury a minor child, sixteen years of age, a son of the alleged immediate employer, William Pruitt. Plaintiff was, therefore, working for his father on account of that relation and not under any contract of employment, express or implied. His father was entitled to his services without compensation, and none was promised. Plaintiff was not working for wages, but was living with and being supported by his father, William Pruitt, for whom he was working at the sawmill. He was, however, doing the work of an adult, for which William Pruitt as paying

others $2 per day. It was also shown that at the time William Pruitt contracted with defendant to operate this sawmill defendant knew that plaintiff would make a hand for his father at this work.

"We may readily agree that under the general law the relation of employer and employee did not exist between William Pruitt and his minor son, this plaintiff; that no contract of employment, express or implied, existed, and that William Pruitt did not in fact and was under no legal obligation to pay plaintiff for his work. This is too elementary and well established to require any citation of authorities. This case does not, however, involve the question of liability for wages between plaintiff and his father. The act under which plaintiff claims compensation for his injuries is, as its name indicates, a workman's compensation act rather than an employees' compensation act. That plaintiff was a workman engaged in work covered by this act, we think, is clear, whether the strict relationship of employer and employee existed or not. The act itself must govern, and the general law must give way to the plain terms of the statute. Section 3305 (a), Rev. St. 1929, defines the term 'employee,' for the purposes of this act, thus: 'The word "employee" as used in this chapter shall be construed to mean every person in the service of any employer, as defined in this chapter, under any contract of hire, express or implied, oral or written, or under any appointment or election.' The term 'employee' is thus given a broad meaning and includes every person 'in the service of any employer' and is not confined to those 'under any contract of hire,' express or implied, but also includes those performing service by 'appointment or election.' "

Webster's New International Dictionary, Second Edition, Unabridged, defines the word "appointment," among other definitions, as "A directing or ordaining," and lists among the synonyms, "Designation, command, order, and direction."

Therefore, under the rule of Pruitt v. Harker, *supra,* when plaintiff responded to the orders and direction of Curtis to perform work for appellant, he became the servant, *pro hac vice,* of Brashear Truck Lines, Inc., while engaged in said work, if there was a relinquishment by Curtis to appellant of the right to control and direct the details of the work.

This ruling is in accord with the law with respect to ordinary cases of Master and Servant announced by the decisions of the appellate courts in this State, and the cases arising under Workmen's Compensation Acts both here and in other jurisdictions.

Under those decisions, it has been universally held that an employee in the general employment of the master may, with his consent, be loaned to another and become the servant of the person to whom he is loaned if the latter has exclusive control over the work. [McFarland v. Dixie Machinery & Equipment Co. (Mo.), 153 S. W. (2d) 67; Clayton v. Wells, 324 Mo. 1176, 26 S. W. (2d) 969; Maher v.

Donk Bros. Coal & Coke Co., 323 Mo. 799, 20 S. W. (2d) 888; Karguth v. Donk Bros. Coal & Coke Co., 229 Mo. 580, 253 S. W. 367; Standard Oil Co. v. Anderson, 212 U. S. 215, 220, 29 S. Ct. 253, 53 L. Ed. 480; Barlow v. Shawnee Investment Co., 229 Mo. App. 1, 48 S. W. (2d) 35; Simmons v. Kansas City Jockey Club, 334 Mo. 99, 66 S. W. (2d) 119.]

One of the most frequently cited authorities is Scribner's Case, 231 Mass. 132, 120 N. E. 350, 3 A. L. R. 1178. The claimant in that case, who was in the general employ of an ice company, was lent for hire, with a team and wagon, to a coal company, to load and deliver coal, etc. He took his orders from the office of the coal company, and was told where to deliver the coal by one of the clerks of the coal company. He received his pay from the ice company, and was directed to look after the horses and wagon in his charge. Under these facts, the coal company was held to be the employer and liable to claimant for compensation.

The court said:

" 'In determining whether, in a particular act, he is the servant of his original master or the person to whom he has been furnished, the general test is whether the act is done in business of which the person is in control as a proprietor, so that he can at any time stop it or continue it, and determine the way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result.' [Shepard v. Jacobs, 204 Mass. 110, 112, 90 N. E. 392, 393 (26 L. R. A. (N. S.), 442, 134 Am. St. Rep. 648).] 'The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired.' [Coughlan v. Cambridge, 166 Mass. 268, 277, 44 N. E. 218, 219.] Applying these tests, it is clear that Scribner at the time of the injury was an employe of the Coal Company; he was in that company's yard, engaged in its business and doing its work; and he was under its direction and subject to its orders. Whatever may have been the relation of Scribner to the Ice Company in the care and management of the horses, at the time of his injury he was engaged in work over which that company had no control. The business was that of the Coal Company and under its direction. The transaction between the two companies amounted only to a loan of the Ice Company's servant to the Coal Company, the servant became the employe of the latter for the time being, and on the evidence he must be found to have assented to this although remaining in the general employment of the Ice Company."

The great weight of authority is to like effect. [See Forest Preserve District of Cook Co. v. Industrial Commission, 357 Ill. 389, 192 N. E. 342; Lecker v. Valentine, 286 Pa. 418, 133 Atl. 792; Bowser v. Milliron Const. Co., 93 Pa. Sup. 34; Caruso v. Comm., 99 Pa. Sup. 238;

Cayll v. Waukesha Gas & Electric Co., 172 Wis. 554, 179 N. W. 771; Berrier v. Associated Ind. Co. (Fla.), 196 So. 188; McEachern v. Pine Wood Lbr. Co., 5 La. App. 665; Emack's Case, 232 Mass. 596, 123 N. E. 86; Spodick v. Nash Motor Co., 203 Wis. 211, 232 N. W. 870; Famous Players Lasky Corp. v. Ind. Acc. Com., 194 Cal. 134, 228 Pac. 5, 34 A. L. R. 765; McGorry v. Sterling Supply Corp., 116 Pa. Sup. 563, 176 Atl. 808; Walls Case (Mass.), 199 N. E. 326; Parsons v. M. J. Daly & Sons et al., 114 Conn. 143, 158 Atl. 216; Liberty Mut. Ins. Co. v. Kinsey · (Ga. App.), 16 S. E. (2d) 179; Allen-Garcia Co. v. Ind. Comm., 334 Ill. 390; 166 N. E. 78; Spanja v. Thibodaux Boiler Works (La.), 2 So. (2d) 668; Bisson v. Winnipesaukee Air Service, Inc. (N. H.), 13 Atl. (2d) 821; Oklahoma Gen. Power Co. v. State Ind. Comm., 108 Okla. 251, 235 Pac. 1095; Ideal Steam Laundry v. Williams, 153 Va. 176, 149 S. E. 479; Wardrep v. Houston, 168 Tenn. 170, 76 S. W. (2d) 328.]

From the foregoing cases we find the law to be that the relation of employer and employee exists as between a special employer to whom an employee is loaned and said employee whenever the following facts concur: (a) consent on the part of the employee to work for the special employer; (b) actual entry by the employee upon the work of and for the special master pursuant to an express or implied contract so to do; (c) power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue.

In applying this test to the instant case, we find from plaintiff's evidence that an agreement was made between Curtis and Brashear Truck Lines, Inc., whereby plaintiff, together with a truck belonging to Curtis, were loaned to appellant. Consent to this arrangement by the plaintiff may be inferred from his acceptance of and obedience to orders given by Brashear Truck Lines, Inc., through its operating manager and other representatives. [Scribner's Case, 231 Mass. 132, 120 N. E. 350; Torsey's Case, 130 Me. 65, 153 Atl. 807; Murray v. Railroad, 229 N. Y. 110.]

Plaintiff was actually engaged in work for Brashear Trust Lines, Inc., at the time he received his injury, thus supplying the second necessary element above referred to. It also appears from plaintiff's own evidence that Brashear Truck Lines, Inc., had complete control over the details of the work and that Curtis at no time exercised or claimed the right to exercise any supervision over plaintiff in the performance of the work which he did for appellant. It, therefore, appears that all of the elements necessary to bring into operation the borrowed servant doctrine were present in the case at bar.

The fact that Curtis continued to pay the plaintiff's wages does not change the result. The cases hold that while payment of wages is a circumstance which may aid in determining who is the employer, such payment of itself is insufficient to establish that fact. It is merely

useful in determining who has the power of control, which latter is the controlling consideration. [McFarland v. Dixie Machinery Co. (Mo.), 153 S. W. (2d) 67; Tarr v. Hecla Coal & Coke Co., 265 Pa. 519, 109 Atl. 224; Sgattone v. Mulholland & Cotwals, 290 Pac. 341, 138 Atl. 855, 58 A. L. R. 1463; Independence Ind. Co. v. Industrial Accident Com. of California, 203 Cal. 51, 262 Pac. 757; Indiana Iron Co. v. Cray, 19 Ind. App. 565, 48 N. E. 803; Crawfordsville Shale Brick Co. v. Starbuck et al., 80 Ind. App. 649, 141 N. E. 7; Daniel J. Chisholm's Case, 238 Mass. 412, 131 N. E. 161; Berrier et al. v. Associated Ind. Co. et al. (Fla.), 196 So. 188.]

It has also been held that the fact that the general employer retains the power to discharge the employee does not relieve the special employer of liability if he has control of the employee in the work. [Torsey's Case, 130 Me. 65, 153 Atl. 807.]

Our conclusion, therefore, is that both under the common-law rule and under the statute defining "employee," Section 3695, Revised Statutes Missouri, 1939, plaintiff was, at the time he received his injury, an employee of Brashear Truck Lines, Inc., and that his rights were under the compensation act, provided, of course, that Brashear Truck Lines, Inc., was operating under said act at said time.

Whether or not defendant was operating under the Workmen's Compensation Law was an affirmative defense, with the burden on defendant to plead and prove that defense. [Kemper v. Gluck, 327 Mo. 733, 39 S. W. (2d) 330.] Defendant entered a plea that it was operating under the act, and that whatever rights, if any, plaintiff had were under said act. At the trial defendant offered evidence that it was operating under and subject to the provisions of the compensation act. This evidence consisted of a record kept by the company showing various truck movements on the very day that plaintiff was injured. This record discloses that on said day appellant had more than ten persons in its employ. Appellant also offered oral testimony that it has been operating under the Workmen's Compensation Law since said act had been in operation. In addition, appellant offered a claim for compensation, signed and filed with the Workman's Compensation Commission, by plaintiff, and against appellant for compensation for the injuries sued for in this case. This latter piece of evidence, being analogous to a pleading, was clearly admissible as an admission by plaintiff of all facts against his interest alleged therein. [Tralle v. Chevrolet Motor Co., 230 Mo. App. 535, 92 S. W. (2d) 966; Casebolt v. International Life Ins. Co. et al. (Mo.), 42 S. W. (2d) 939.] And, its filing, as it had named therein appellant as the employer under the act, was necessarily an admission of the existence of all facts necessary to make appellant an employer subject to the Workmen's Compensation Law, and it is binding on plaintiff in this proceeding unless contradicted or explained away. [Steele v. Kansas City So. Ry. Co., 265 Mo. 97, 175 S. W. 177; Castens v. Supreme

…

Lodge Knights and Ladies of Honor, 190 Mo. App. 57, 175 S. W. 264; Kirk v. Metropolitan Life Ins. Co., 336 Mo. 765, 81 S. W. (2d) 333; DeLorme v. St. Louis Public Service Co. (Mo. App.), 61 S. W. (2d) 247.] Plaintiff offered no such evidence. He merely stated, "I never did receive anything on that claim for compensation." Nor did he offer testimony to contradict appellant's evidence that it had been operating under the act since the law was passed. In fact, from an examination of the whole record herein, no real issue was ever presented as to whether or not appellant was subject to the compensation act, and we believe that in view of plaintiff's admission, and the testimony of appellant corroborating the admission, that we can declare as a matter of law that appellant at the time of plaintiff's accident was operating under the compensation act.

It follows, therefore, that the court erred in failing and refusing to give and read to the jury the instruction in the nature of a demurrer to the evidence. The judgment is reversed. *Hughes, P. J.,* and *McCullen, J.,* concur.