[1] This is a claim for compensation originating before the Division of Workmen's Compensation of the Department of Industrial Relations of Missouri. The finding of the Commission was for the claimant and on appeal to the circuit court the Commission's finding was affirmed. From the judgment affirming the award of the Commission the employer and its insurer appeal.
[2] It is admitted that the claimant sustained injuries resulting from an accident arising out of her employment, but it is denied that she was in the employment of the Green Lea Dairies, Inc., at the time.
[3] The evidence given by the claimant was to the effect that she was employed by Green Lea Dairies in 1944 as a clerk in one of its stores. It was one of several ice cream stores and soda fountains that the company operated and from time to *Page 115 
time the claimant was requested by a Mr. Pattin, the company's manager, to work at one of the other stores. She had done so on quite a few occasions and about November 15, 1946, Pattin asked her to work in a store on Taylor Avenue in the City of St. Louis. She agreed to do this and thought that she was in the employ at all times of the Green Lea Dairies. Pattin took her to the store and told her that she would not be there more than two weeks.
[4] The evidence discloses that the store in question was not owned by Green Lea Dairies, Inc., but by a man named Cecil Murdick.
[5] Murdick testified that Pattin agreed to loan the claimant to him and that he paid her salary. She was the only employee in his store and Murdick would stop in once a day and check the cash register. At times this would be before the claimant arrived. The claimant usually opened the store and stayed until closing time when she locked up. She ordered the ice cream needed and paid for it with cash from the register and generally ran the business. All the ice cream and products sold came from Green Lea Dairies in boxes with its name upon them and its name was upon the straws and cartons used there. Murdick's name did not appear on the store window and the only sign there indicated that it was an ice cream store.
[6] This witness was cross-examined as follows:
[7] "Q. Mr. Murdick, did you ever tell Mrs. Wittgrove that she was going to be in your employ for those two weeks? A. I did not.
[8] "Q. When she came into your store with Mr. Pattin, was she fully advised as to the nature of her duties at the store? A. She was.
[9] "Q. I believe you stated there was no need to discuss the matter of what she had to do with her because she knew what she was supposed to do? A. That's right. I operated exactly as the Green Lea Ice Cream Company does and we serve the same things and I followed their principles as near as possible.
[10] "Q. So there was nothing then that would indicate to her that she was working for a different employer when she came down to work for you? A. To my knowledge that's right."
[11] Pattin testified that he had asked claimant to work in the Taylor Avenue store and told her that Murdick would pay her wages. He stated that except for the manner of pay he gave her no reason to believe that she was not still in Green Lea Dairies' employ. He was asked, "You didn't directly tell Mrs. Wittgrove that you were taking her out of your employ and putting her in the employ of Cecil Murdick for a period of two weeks and she would come back to your employ thereafter, did you?" He answered by saying, "As far as I remember that matter was not discussed."
[12] Murdick's store was operated differently in some respects from the stores of the Green Lea Dairies. He had no safe or vault and claimant was instructed to take the cash from the register each night and hide it in a safe place, whereas in the Green Lea Stores in which she had worked the cash was always put in a safe at closing time. She paid cash for the ice cream that was delivered and billed to "Taylor store", but previously she had only signed a receipt for it. The other notable difference was that Murdick paid her in cash and she had been paid by Green Lea Dairies' checks. About ten or eleven days after she started to work at the Taylor Avenue store she was injured by an electric fan and later when she went to the office of the Compensation Commission to file her claim Murdick accompanied her and she then learned for the first time that he owned the store.
[13] It is the contention of the defendants that under the above state of facts the loaned servant doctrine is applicable and that claimant was therefore the employee of Murdick, under his control, and that they are not liable for the injuries she sustained.
[14] The loaned or borrowed servant doctrine is simply a rule that an employee in the general employ of one master may, with his consent, be loaned to another *Page 116 
master and become the servant or employee of the one to whom he has been loaned. The borrowing employer, however, must have exclusive control over the employee's work. Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 162 S.W.2d 628; McFarland v. Dixie Machinery Equipment Co., 348 Mo. 341, 153 S.W.2d 67, 136 A.L.R. 516; Nolan v. Joplin Transfer Storage Co., 239 Mo.App. 915, 203 S.W.2d 740; Lee v. Oreon E. R. G. Scott Realty Co., Mo.App., 96 S.W.2d 652.
[15] As to the necessary elements to bring into effect this doctrine, we stated in Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 162 S.W.2d 628, loc. cit. 633:
[16] "* * * that the relation of employer and employee exists as between a special employer to whom an employee is loaned and said employee whenever the following facts concur: (a) consent on the part of the employee to work for the special employer; (b) actual entry by the employee upon the work of and for the special master pursuant to an express or implied contract so to do; (c) power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue."
[17] It will be seen that the first requisite is the consent of the employee and it is maintained that the fact that the plaintiff was paid by Murdick in cash, instead of by check of Green Lea Dairies, and the difference between Murdick's store and those of the defendant employer, were sufficient to put claimant upon notice and that her consent may be inferred because she took orders from Murdick.
[18] In view of Murdick's testimony that he operated exactly as Green Lea Dairies did and that there was nothing to indicate any change of employer the slightly differing details such as paying for the ice cream and being paid in cash were certainly not of themselves notice of anything. The claimant had no knowledge that she was not in the dairy company's employ and since the company could run its stores in any manner it saw fit a hired clerk was not obliged to draw any conclusions from the slight changes noted.
[19] As to her taking orders from Murdick, she had taken orders from the managers of other stores in which she had worked and the fact that she was under his direction when to all appearances he was just another store manager for the dairy company could not of course raise any inference that she had consented to a change of employer. One cannot consent by inference to a change in a contract of employment when no change has been suggested and there is nothing connected with the work to indicate that a change has taken place.
[20] In passing upon a somewhat similar state of facts, in Murray v. Union Railway Co. of New York City, 229 N.Y. 110, 127 N.E. 907, the court said: "We do not doubt that the same man may be in the general employment of one master and the special employment of another. * * * But employment, like any other contract, presupposes understanding. The new relation cannot be thrust upon the servant without knowledge or consent. * * * He must understand that he is submitting himself to the control of a new master. * * * Understanding may be inferred from circumstances, but understanding there must be. * * * There can be no unwitting transfer from one service to another. * * * He remained, in default of knowledge, the servant of the hirer."
[21] It would be difficult to improve upon the above quotation for clarity in stating the law with which we are here concerned. Vera Wittgrove was not told of any arrangement that the dairy company had with Murdick and she is chargeable only with the legal consequences of such changes as she knew of and approved. As between herself and her hirer she was still in its employ and we are not concerned in this case with the rights of third parties.
[22] The borrowed servant doctrine does not here apply and the Commission properly held the claimant to be in the employment of the defendant employer. *Page 117 
[23] It is the recommendation of the Commissioner that the judgment of the circuit court be affirmed.