E. O. PRATT, Appellant,

v.

REED & BROWN HAULING COMPANY,
Respondent.

No. 23595.

Kansas City Court of Appeals.

Missouri.

Oct. 1, 1962.

Galen Knowlton, Michael J. Drape, Knowlton & Drape, Kansas City, for appellant.

Samuel J. Molby, Kansas City, Watson, Ess, Marshall & Enggas, Kansas City, of counsel, for respondent.

## 58

CROSS, Judge.

This is an appeal from the judgment of the circuit court reversing a final award of workmen's compensation benefits in the amount of $5,145.00 made by the Industrial Commission in favor of claimant-appellant E. O. Pratt, and against respondent Reed & Brown Hauling Company as his employer.

Appellant's claim was originally filed against three corporations named as employers: Eby Construction Company, Bowen Construction Company and Reed & Brown Hauling Company. Appellant undertook to hold the Eby Company and the Bowen Company liable as employers on the theory that he was their statutory employee as defined by Section 287.040 V.A.M.S. The claim was asserted against Reed & Brown on the concept that appellant was that company's employee *in fact*.

The Industrial Commission found that appellant was an actual employee of Reed & Brown within the coverage afforded by the Workmen's Compensation Law, but declined to discuss the alleged secondary liability of the Eby and Bowen companies under Section 287.040 V.A.M.S., for the stated reason that Reed & Brown was insured as required by law. Liability under the final award is limited to respondent Reed & Brown and its insurer, Central Surety and Insurance Corporation.

The circuit court set aside the commission's award on findings (1) that the evidence did not support the commission's determination that claimant was an employee of Reed & Brown, (2) that claimant was an independent contractor at the time of his injury, and (3) that claimant was not a statutory employee of Reed & Brown under the provisions of Section 287.040 V.A.M.S.

The primary issue presented here is whether claimant was an employee of Reed & Brown, or was an independent contractor, at the time he undisputedly suffered accidental injuries. We proceed to review a lengthy record and set out the facts pertinent to this question. It will be observed that there is some conflict in the evidence.

In 1959 the Eby Construction Company secured contracts for the construction of four Nike missile bases to be located near Lawson and Lone Jack in Missouri, and Leavenworth and Gardner in Kansas. Eby entered into a sub-contract with Bowen Construction Company for the laying of certain asphalt surfaces on roadways and launching pad areas at the missile base sites. In turn, Bowen entered into an oral sub-subcontract with Reed & Brown providing that the latter would haul crushed rock, by truck, as required by Bowen in laying the asphalt. Bowen crushed and supplied the rock. Reed & Brown was required only to furnish trucks and drivers and haul the rock from stockpiles near the sites to the places where Bowen would use it. For this service, Bowen agreed to pay Reed & Brown a stipulated amount per hour for each truck furnished. Although Reed & Brown owned thirty-three dump trucks, that number was *not always sufficient to do all of its con-tracted work, and it became necessary to engage the services of additional trucks and drivers from time to time in order to complete hauling contracts. Claimant appears in this case as the owner and driver of one of the additional trucks used by respondent,* first at the Lawson site and later at the Lone Jack site where the accident occurred.

For several years prior to 1959 claimant had owned a tandem axle truck with a dump bed of 10 to 12 yards capacity, for which he was granted a Public Service Commission permit as a common carrier. This truck was available to the public for hauling, and claimant so advertised in the classified section of the Kansas City telephone directory. In the fall of 1959, some time prior to October 9, the date of the accident, claimant "applied for work" at the Reed & Brown "headquarters". He orally agreed with Stanley Reed, president of respondent corporation, to furnish his truck, drive it and haul rock at the Lawson, Missouri, site, for pay at the rate of $7.50 per hour (inclusive of truck and driver). At Lawson the crushed rock was loaded into dump trucks, including claimant's, by a

high-loader operated by Bowen. Claimant and the other drivers hauled the rock a short distance to launching pad locations and dumped or spread it as directed by Bowen's employees.

It was claimant's testimony that respondent furnished claimant daily transportation from Independence to the work at Lawson except on one or two occasions when claimant drove his own car. Respondent supplied the gasoline for claimant's car on those occasions. Respondent's employee Madden told claimant at what time to report to work in the morning—seven o'clock and told him when to quit—usually around five o'clock every day. Ordinarily Madden kept track of claimant's working hours and turned in his time daily. Claimant worked at Lawson until the job was completed. On the last day Mr. Reed asked claimant if he wanted to work at the Lone Jack site. Claimant indicated that he wanted to do so unless something better came up.

About a week or ten days later, Mr. Reed notified him that respondent was ready to resume hauling at Lone Jack and informed him when to report and where to go. Claimant proceeded as directed and arrived at the Lone Jack work site by following one of respondent's trucks driven by an employee named Joe. The same general type of operations was carried on at Lone Jack as had been done at Lawson. Reed & Brown resumed the hauling of crushed rock to supply Bowen such quantities as were required in its asphalt work. Only three trucks were used on the job at Lone Jack—the truck owned and driven by claimant and two of respondent's own trucks. The latter were operated by two drivers employed by respondent—hourly workers paid at the rate of $2.71½ per hour. Concerning the nature of this hauling operation, President Reed testified: "Its simple, you load one place and go dump at another place". Respondent had no foreman or supervisor on the job. The three trucks were loaded at Bowen's stockpile by Bowen's high-loader and driven to an area designated by Bowen's loading employee. At the designated areas the three drivers dumped the rock or spread it as directed by Bowen's spotter.

Claimant testified that he was paid by the hour at Lone Jack, the same as he was paid at Lawson, and at the hourly rate of $7.50. The average working day was ten hours. He stated that Mr. Reed told him when to start and when to stop, that he followed the other two "Reed men" in determining the route, that some one with Reed kept track of his time, that Mr. Reed paid him, and that all he did was merely drive his truck and dump the gravel wherever some one told him to put it. Whether or not he was to work on Saturdays would be decided by Mr. Reed. Claimant also said that he would have hauled to any point and would have observed different hours of starting and stopping work than had been arranged if Mr. Reed had so directed. Claimant and the two Reed & Brown drivers started and quit work at the same time. Claimant commenced his work day by following the "lead truck" driven by one of respondent's drivers. The "lead man, Reed's employee" told claimant when to quit. There was no agreement as to how long claimant would work for respondent. He was "free to go"—that is, he could quit and leave the job at any time. Likewise, respondent had the right to terminate claimant's services at will. Claimant paid all expenses of operating his truck. He received no suggestions from respondent regarding its maintenance. There was no withholding of social security or income tax from claimant's pay. He was a card carrying member of the teamsters' union.

James E. Williams, respondent's employee, testifying on its behalf, said that he drove one of the two Reed & Brown trucks used at Lone Jack, that Joe Eschenbrenner drove the other company truck, and that additionally, claimant furnished and drove his own truck. The three drivers were rendering identical services. Williams testified that there was nothing claimant was doing on the job that was any different from what he was doing. The witness described the

duties of the truck drivers essentially as stated by claimant. A high-loader operated by a Bowen employee filled the trucks with crushed rock from a stockpile. The trucks were then driven to areas pointed out by a Bowen spotter. After dumping or spreading a rock, as directed, the drivers would return to the stockpile and repeat the process. The witness testified that when the job began at Lone Jack, Mr. Reed directed him to report to Bowen's foreman and to follow the foreman's directions; that although Mr. Reed had set a general work schedule for an eight hour day, the actual starting and quitting time was determined by Bowen's foreman; that "we stopped for lunch when the Bowen people shut down"; and, that Bowen's foreman kept the time for claimant and the two Reed & Brown drivers and "turned that in each evening to Mr. Reed as to the hours the trucks had worked there during the day". The three trucks hauled rock only when the Bowen employees wanted it or needed it. It was the function of Reed & Brown "to just haul the gravel where some one wants it placed down there". Reed & Brown furnished the drivers no transportation to the job. The hourly rate of pay for Williams and Eschenbrenner was $2.71, with time and a half for overtime work.

Stanley Reed, president of respondent corporation, testified on its behalf. He stated that respondent's oral contract with Bowen was, "essentially, * * * to furnish such hauling service as Bowen might need for the transporting, dumping and spreading of this rock". Respondent had no foreman or supervisor at Lawson or Lone Jack. There were not enough trucks working to require supervision. The usual practice for the type of work done at Lawson and Lone Jack was to direct the drivers "to follow so and so and go where some one told him to dump, fill it up at the stockpile and dump it where he was told". Respondent's two drivers and claimant were instructed that they were to load at the stockpile and haul to launching pads and that Bowen's foreman would tell them what

time to start and quit and what to do while they were working. Reed frequently was on the job to see what was going on. He stated that he didn't have to be there every minute; that "they were grown men, they should have known what to do". The only instructions given claimant were "how to reach the stockpile". Reed thought "that was the only directions that I needed to give him" because of the simple nature of the work—"loading one place and dumping at another place". At the job site Reed gave no directions either to claimant, or to Williams and Eschenbrenner, who drove company owned trucks. All three drivers were union members. When claimant was employed nothing was said about his right to substitute a driver. Reed assumed that claimant would drive his own truck. It was Reed's memory that on one occasion claimant had substituted a driver on the Lawson job. Reed denied that any gasoline or transportation had been furnished to claimant at Lawson. He stated that as to "results" he had the right to control claimant. Additionally, the witness testified as follows:

"Q. Did you and Mr. Pratt have any understanding as to how long his truck was to work at Lone Jack?

"A. Well, no, we didn't. I mean, he could quit any time that he wanted to. By the same token I could put another one of my trucks down there anytime that I wanted to.

* * * * * *

"Q. By the same token he could quit any time he wanted to, either way, and certainly by the same token as far as your truck drivers were concerned you could tell them that they were through, could you not?

"A. Well, yes.

* * * * * *

"Q. * * * From what you say, I gather the only difference between Mr. Pratt and your other drivers was that your other drivers who drive your

trucks were paid so much an hour under union contract for their services as drivers while Mr. Pratt was paid a flat sum for each hour which included both his services and the use of his truck?

"A. Well, that is right.

"Q. Other than there there was not any difference in the way Mr. Pratt operated while working for you and the way your other drivers operated, was it?

"A. Well, on those two particular jobs, no.

\* \* \* \* \* \*

"Q. But you had the right to control the way he—control his services if you chose to exercise your right?

"A. What do you mean if I wanted to I could tell him he had to put twenty ton on his truck and drive like a mad man or I would no longer need him? Well, I guess I could if I wanted to, but I never did.

\* \* \* \* \* \*

"Q. So that Mr. Pratt, as I understand it, was not treated any different than those who would be driving Reed and Brown trucks?

"A. That is correct.

\* \* \* \* \* \*

"Q. And I said you had the same right to control the manner in which Mr. Pratt did his work the same as you had with your own drivers?

"A. That is right."

As a basis for its award of compensation to claimant, the Commission made the following findings of fact (in part):

"We find from all of the evidence that E. O. Pratt was an actual employee of the Reed and Brown Hauling Company on October 19, 1959, and that he

was not at that time an independent contractor.

"Whether in a given case a worker is an employee or an independent contractor depends upon the right of the employer to control his physical conduct in the performance of the details, i. e., the manner and method of doing the work. \* \* \* Nabors vs. United Realty Co. [Mo.App.], 298 S.W.2d 474, 1. c. 477. Specie vs. Howerton Electric Co., K.C.C.A. No. 23,298 (not yet reported).[1] We think the testimony of Stanley H. Reed, President of the Reed and Brown Hauling Company, abundantly demonstrates that his company had the right to control the manner and method of doing the work being performed by the employee, E. O. Pratt. \* \* \*."

 Claimant first assigns that the trial court erred in setting aside the award because there was sufficient competent evidence to sustain the findings of the Industrial Commission that claimant was an employee and not an independent contractor. The issue thus raised is not triable de novo by this court. We have no authority to make findings of fact in cases originating in administrative tribunals. Our review of decisions made by the Industrial Commission on questions of fact is limited to a determination of whether its findings are supported by "competent and substantial evidence upon the whole record." V.A. M.S., Const., Art. V, Sec. 22. The Supreme Court, en banc, in Kansas City v. Rooney, 363 Mo. 902, 254 S.W.2d 626, defines the scope of review authorized in cases of this nature, as follows: "This 'does not mean that the reviewing court may substitute its own judgment on the evidence for that of the administrative tribunal. But it does authorize it to decide whether such tribunal could have reasonably made its findings, and reached its result, upon consideration of all of the evidence before it; and to

1. Now reported. Mo.App., 344 S.W.2d 314.

set aside decisions clearly contrary to the overwhelming weight of the evidence.' " However, decisions of the Commission which are clearly an interpretation or application of the law, as distinguished from a determination of the facts, are not binding on the reviewing court and are subject to review and correction by that court. Specie v. Howerton Electric Co., Mo.App., 344 S.W.2d 314, and cases cited.

An "employee", as contemplated by the Workmen's Compensation Law, is defined by Section 287.020 V.A.M.S. as "every person in the service of any employer * * under any contract of hire, express or implied, oral or written * * * ", and the word "employer" is defined by Section 287.030 V.A.M.S. as "every person * * * (or) * * * corporation * * * using the service of another for pay". These definitions, as well as the whole of the Workmen's Compensation Law, are to be broadly and liberally construed by the courts so as to effectuate the legislative intent to afford compensation to an employee. Specie v. Howerton, supra, and cases cited. In Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 162 S.W.2d 628, the court said: "Our Supreme Court, in construing this provision of the act, has given it a broad meaning, and has held that it should be so construed that any doubt presented in any case should be resolved in favor of the employee being covered by the act."

The Supreme Court has adopted the definitions of master, servant and independent contractor as formulated by the American Law Institute's Restatement of the Law of Agency, Chapter 1, Section 2, and has applied them in cases involving the issue now before us. McKay v. Delico Meat Products Co., 351 Mo. 876, 174 S.W.2d 149. Those definitions are quoted as follows:

"A master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service.

"A servant is a person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master.

"An independent contractor is a person who contracts with another to do something for him, but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking."

Missouri decisions have consistently reflected the principles inherent in the quoted definitions. As stated in Maltz v. Jackoway-Katz Cap Co. et al., 336 Mo. 1000, 82 S.W. 2d 909, "The (employer-employee) relationship * * * is peculiarly characterized by right of control vested in the latter." An employer retains the right to control the details of the work done by an employee as well as to control the final result to be accomplished. However, an independent contractor is not subject to control by his employer except as to the result of his work. Maltz v. Jackoway-Katz Cap Co. et al., supra.

Missouri courts recognize and apply certain specific tests in determining whether an individual is an employee, or an independent contractor. The various factors to be considered have been summarized in Lawrence v. William Gebhart, Jr. & Son, Mo.App., 311 S.W.2d 97, as follows: "the extent of control which, by the agreement, the alleged employer may exercise over the details of the work; the actual exercise of control; whether the person performing the service is engaged in a distinct and independent calling, requiring the skill of one specially trained; whether the work is usually done under the direction of an employer, or by a specialist without supervision; the length of time for which the person is hired; the right to discharge the

worker at any time prior to the completion of the work; the method of payment, whether by the time or by the job, without reference to the time consumed in performing the service; whether the alleged employer or the workman supplies the necessary tools, machinery and appliances; whether or not the work is a part of the regular business of the alleged employer; whether the employer has the right to hire, discharge and determine the pay of others who assist the worker in the performance of the work; and whether the alleged employer directs the details of the work performed by those assisting said worker."

In some cases it has been held that in determining whether a person rendering services to another is an employee or an independent contractor, *the ultimate and decisive test is the right of control.*[2] In other decisions the courts have characterized the right of control as "of the greatest significance";[3] "of supreme importance";[4] "the primary test";[5] "determinative";[6] and, "the controlling consideration".[7]

The evidence in this case and reasonable inferences to be drawn from it, considered in the light of the legal tests we have noted, tend to establish the following facts and circumstances indicating that claimant was an employee:

■ 1. Actual physical control over claimant's work was exercised either by respondent or Bowen. No control was retained by claimant except as to the starting, stopping and guiding of the truck incident to its operation. Respondent set the general working schedule, and delegated to Bowen the right to set the specific time for starting and quitting each day's work, and to designate where the rock would be dumped. The work was of such simplicity that respondent needed no foreman or supervisor on the job. The directions given by Bowen were such as would ordinarily have been given by a foreman if respondent had utilized one. Constructively, the control exercised by Bowen was control exercised by respondent. In any event, the determining factor is not whether respondent actually exercised control over the work. The vital test is whether respondent had the *right* to exercise that control. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909; Schultz v. Moerschel Products Co., Mo.App., 142 S.W.2d 106; and Tokash v. General Baking Co., 349 Mo. 767, 163 S.W.2d 554.

2. Both claimant and respondent recognized respondent's right to control claimant in the performance of his work. This is shown by plaintiff's testimony and by the quoted admissions of respondent's president. In McKay v. Delico, supra, a similar admission was held to be "conclusive".

■ 3. Respondent had the unrestricted right to fire claimant at any time—with or without cause. "The power to fire is the power to control. The absolute right to terminate the relationship without liability is not consistent with the concept of independent contract". Larson, Workmen's Compensation Law, Vol. 1, Sec. 44.35, page 654. "No single fact * * * is more conclusive of the nature of the employment than that of

2. Fisher v. Hennessey, Mo.App., 329 S.W. 2d 225; Schultz v. Moerschel *Products* Co., Mo.App., 142 S.W.2d 106. Also see McKay v. Delico Meat Products Co., 351 Mo. 876, 174 S.W.2d 149; Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909; Tokash v. General Baking Co., 349 Mo. 767, 163 S.W.2d 554; Sargent v. Clements, 337 Mo. 1127, 88 S.W.2d 174.

3. Coy v. Sears, Roebuck & Co., 363 Mo. 810, 253 S.W.2d 816.

4. Garcia v. Vix Ice Cream Co., Mo.App., 147 S.W.2d 141.

5. Hackler v. Swisher Mower & Machine Co., Mo.App., 284 S.W.2d 55.

6. Bernat v. Star-Chronicle Pub. Co., Mo. App., 84 S.W.2d 429.

7. Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 162 S.W.2d 628.

the employer's unrestricted right to end the service whenever he chooses." Schultz v. Moerschel Products Co., Mo.App., 142 S.W. 2d 106. Also see Fisher v. Hennessey, Mo. App., 329 S.W.2d 225.

4. There was no contract calling for "a fixed or determined result to be fulfilled." See McKay v. Delico, supra.

5. Claimant was paid by the hour. "Payment by a unit of time, such as an hour, day or week, is very strong evidence of employment status". Larson's Workmen's Compensation Law, Vol. 1, Sec. 44.33(a), page 646.

6. The work done by claimant was a part of respondent's regular business. It was no different from that performed by the drivers who, admittedly, were employees of respondent. As stated in Larson, Workmen's Compensation Law, Section 44.34, page 653, " * * * there is a growing tendency to classify (truck) owner-drivers as employees when they perform continuous service which is an integral part of the employer's business".

7. The degree of skill required in the work was minimal. There is no special aptitude necessary to drive a truck up to a stockpile of rock, wait until it is loaded by another person, drive the truck to a place pointed out, and dump the dock as directed.

It may be conceded that some of the evidence is suggestive of the independent contractor status—principally the circumstance that plaintiff furnished the truck and the fact that there was no withholding of social security or income taxes from claimant's wages. These and other fact considerations urged by respondent are merely evidentiary and must be weighed and considered toegther with all other elements of the test. They are in no sense conclusive of a relation foreign to that of employer and employee. McKay v. Delico Meat Products Co., supra; 99 C.J.S. Workmen's Compensation § 64, page 278.

■ After considering all the evidence in this case under the appropriate legal tests, we conclude that the commission was justified in finding that respondent had the right to control the manner and method of the work performed by claimant and in reaching the ultimate conclusion that claimant was an actual employee of respondent. Those decisions and the commission's final award are adequately supported by competent and substantial evidence upon the whole record and rest upon a sound interpretation and proper application of the law.

We have given due consideration to the authorities submitted by respondent. However, those cases have little relevance to this case because they necessarily involve different fact situations. It is the universal expression of our courts that "each case must depend upon its own surroundings, facts, and circumstances, and be subjected to established specific tests in aid of the ultimate and decisive test, right of control." Maltz v. Jackoway-Katz Cap Co., supra.

Claimant also assigns that the trial court erred in finding that he was not respondent's statutory employee under provisions of Section 287.040, V.A.M.S. Consideration of this additional point is unnecessary in view of our determination that the evidence adequately supports the Commission's finding that claimant was an employee in fact.

Accordingly, the judgment is reversed and the circuit court is directed to enter its judgment affirming the award.

All concur.