Bobby L. GASS, Claimant-Respondent,

v.

WHITE SUPERIOR BUS COMPANY and United States Fidelity & Guaranty Company, Defendants-Appellants.

No. 8442.

Springfield Court of Appeals.

Missouri.

Oct. 14, 1965.

Robert W. Schroff, Mann, Walter, Powell, Burkart & Weathers, Springfield, for defendants-appellants.

Gerald H. Lowther, James K. Prewitt, Miller, Fairman, Sanford, Carr & Lowther, Springfield, for claimant-respondent.

HOGAN, Judge.

This is an appeal from an order of the Circuit Court of Cedar County modifying an award of compensation to the respondent, Bobby L. Gass, under the provisions of the Workmen's Compensation Law.[1] The respondent's claim for compensation is based on his assertion that he was injured while delivering a school bus for the employer. The employer and insurer have resisted the claim upon the ground that the claimant was not an employee within the meaning of Section 287.020, Subd. 1, but the Division of Workmen's Compensation has found that he was, and has made an award of compensation and an allowance for necessary medical aid. Upon review, the Industrial Commission affirmed the finding that Bobby was an employee but reduced the amount of compensation. Both parties thereupon appealed to the circuit court, which restored the award originally made by the referee. The emloyer and insurer have appealed to this court as provided by Section 22, Article V, of the Constitution of 1945, V.A.M.S., and Section 287.490(1). The questions before us are: (1) Whether the respondent was an employee rather than an independent contractor when he sustained the injury involved, and (2) whether the claimant's weekly rate of compensation should be computed at the statutory minimum, $16.00 per week, or at the sum of $38.26 per week, as originally found by the Division of Workmen's Compensation.

Very briefly, the facts, taken most favorably to the result reached, are: The employer, now known as the White Bus and Equipment Company, is engaged in the sale, distribution and service of school bus bodies. Though their method of operation is not fully developed in the record, it appears that the buses are assembled either

---

1. Chapter 287, RSMo (1959). All references to statutes and rules are to that revision, unless otherwise noted.

in Kosciusko, Mississippi, or Lima, Ohio, and are then driven to some destination specified by the purchaser. On occasion a school district purchasing a bus will supply its own driver, but it is part of the employer's business routine to deliver the bus. It is at least inferable that there are a number of these drivers who are periodically engaged to make deliveries, though it does not appear in the record how the individual driver is selected nor whether some drivers are employed oftener than others. According to Mr. White, who is described as the "actual head" of the bus company, it is routine procedure to give the individual driver a check list which "describes the things that should be done to a school bus when you're checking it out at a factory," and the driver is also instructed to follow a prescribed route in making delivery, both for the convenience of the employer and the driver. The drivers are paid a fixed sum, are furnished with a release which allows them to take possession at the assembly point, and are expected to "furnish the gasoline, oil and everything else that it takes to make a bus go * * * to its destination."

Floyd Gass, the claimant's father, was the operator of a service garage and was also employed as a school bus driver at Greenfield, Missouri. Mr. Gass had been delivering buses for the employer over a period of several years, and at the time of the referee's hearing in October 1963, he estimated that he had delivered 12 to 15 school buses to various places, "generally to the schools." On the occasion in question, Mr. Gass received a call from a Mr. Sanborn, described as the employer's "sales representative," and was engaged to deliver a school bus to the Sands Motel at Joplin, Missouri, for a school or school district at Webb City. Mr. Sanborn called Mr. Gass a short time later and advised him that a school bus for the Stockton, Missouri, School District would be ready at the same time and, as Mr. Gass described the conversation, "he said can you pick me up a driver and get both buses in service at the same time." Mr. Gass stated that the claimant was available, and Bobby was engaged to drive the second bus.

Mr. Gass was sent a release for each bus, dealer's licenses to be put on the buses, and two checks, one for $65.00 and the other for $60.00. He endorsed one of the checks to the claimant and cashed the other, and it appears that Bobby understood the expense of the trip was to come out of the proceeds of his check. On this occasion Mr. Gass was given specific instructions to check various mechanical operations of the new bus which he was to drive, was given a designated route to follow in transporting the bus, was advised of the destination to which the bus was to be delivered, and was instructed not to drive the bus faster than 35 miles per hour for the first 200 miles; Mr. Gass repeated "the instructions that was given to me" to Bobby either "before we left home or at the time we got down there." Bobby had never undertaken to deliver a school bus before.

On the basis of this instruction, Mr. Gass and Bobby took a commercial bus to Kosciusko, where they obtained the two vehicles and, in Mr. Gass' words, "checked our buses together." Bobby, being unfamiliar with the roads, " * * * asked my dad if I could follow him and he said I could." It was during this return trip that Bobby lost control of the bus he was driving, overturned, and sustained the injuries for which he seeks compensation.

In arguing their case here, the employer and insurer have based their first claim of error on the very broad ground that the evidence permits only the finding that Bobby was an independent contractor, and they say that since the evidence was not disputed the determination of his status was a question of law and not of fact. The respondent answers in the same very general vein, urging that the Workmen's Compensation Act should be construed to include the largest possible class of employees, and that the Workmen's Compensation Act must be construed to resolve all doubts in

favor of the employee. Klasing v. Fred Schmitt Contracting Co., 335 Mo. 721, 730, 73 S.W.2d 1011, 1015 [2, 3]; Baer v. City of Brookfield, Mo.App., 366 S.W.2d 469, 471 [6, 7]. The parties seem agreed as to the general principles involved upon this phase of the appeal, which are that the relationship of master and servant must exist for the claim to be compensable, and that the test of the existence of that relationship is the right to control the means and manner of the service, as distinguished from controlling the ultimate results of the service. Coy v. Sears, Roebuck & Co., 363 Mo. 810, 815–817, 253 S.W.2d 816, 818–819 [1]; McFarland v. St. Louis Car Co., Mo.App., 262 S.W.2d 344, 348 [5, 6]. But regardless of the general rules of law involved, and assuming that since the evidentiary facts are not disputed, and the Commission's conclusions are not binding on us, Corp. v. Joplin Cement Co., Mo., 337 S.W. 2d 252, 258 [7], the adjudication of Bobby's status quite candidly involves matters of individual judgment, for whether the claimant is an employee or an independent contractor " * * * the relationship actually existing will be attended with many features and characteristics which might be none the less present if it were the other status that obtained." Horn v. Asphalt Products Corp., Mo.App., 131 S.W.2d 871, 872. Generally, it is said that the determinative characteristic of the relationship of employee and employer is the employer's reserved right to control the performance of the service rendered, Pratt v. Reed & Brown Hauling Co., Mo.App., 361 S.W.2d 57, 63, but of course the exercise of actual control by the employer may indicate his reserved right to control the employee's actions. 1 Larson, Workmen's Compensation, Section 44.32, page 644.

■ We recognize that, as the appellants argue, the job Bobby undertook in this case was not subject to actual physical supervision by the employer, but that does not necessarily mean that he was not subject to some measure of control. The same argument could be advanced in cases in-

volving traveling salesmen and solicitors, yet our courts have recognized in such cases that sufficient control may be exercised over the details of the salesman's work to make him a servant or employee within the meaning of the Act, rather than an independent contractor. Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 1014–1015, 82 S.W.2d 909, 917–918 [22]; Baldwin v. Gianladis, Mo.App., 159 S.W.2d 706, 708–709 [4] [5]; Horn v. Asphalt Products Corp., supra, 131 S.W.2d at 872–874 [5]. Our review of the whole record convinces us that there was a substantial basis upon which to conclude that Bobby was an employee rather than an independent contractor. In the first place, the work to be done consisted first of making a check or test of the mechanical operation of the new bus. Mr. Gass and Bobby, before taking possession of the vehicles, were required to "check all hub bolts, check the grease, the transmission, the rear end, the oil bath cleaner, check all lights, buzzer on the rear door, check the lettering, fire extinguisher, flares, be sure and check the flasher lights and headlights." They were also given specific instruction concerning the speed at which the new buses were to be driven for the first 200 miles. In our view, it could reasonably be inferred that this procedure was required as a matter of routine by the employer, for Mr. White, the "actual head" of the employer corporation, said that such mechanical tests were required by written instruction, and that "the form was there and they're supposed to follow it." We believe Mr. White was a competent witness to the duties required of both drivers, Ossery v. Burger-Baird Engraving Co., Mo., 256 S.W.2d 805, 809 [7], and that the imposition of the specific detailed duties constituted at least some evidence of the employer's right to control Bobby's performance, because that control was actually exercised. Further, the force and effect of Mr. Gass' and Mr. White's testimony was that a return route to the delivery point was prescribed in detail by the employer. True, this was at least partly for the convenience of the driver, but again

White testified that "[the driver] should probably stay on those [highways] so in case you break down we will know how to get to you, or how to find you." Here again is an indication that the employer had the right to control performance of the work, because actual control was exercised. Further, the services performed by Bobby and Mr. Gass were a part of the employer's regular business of selling, distributing and servicing school bus bodies. This factual evidence is entirely consistent with the relationship of master and servant. Restatement (Second), Agency § 220(2) (h), pages 485–486, 489 (1958). Finally, there is evidence that Mr. White had the right to replace a driver at any time if the driver's conduct was not satisfactory, and his testimony was that if the detailed instructions given a driver were not followed he would replace him, immediately if necessary. This evidence could reasonably be taken as proof that the emloyer could discharge a driver at any time, and tends to establish that the relationship between Bobby and the employer was that of employer and employee, rather than that of employer and independent contractor. Pratt v. Reed & Brown Hauling Co., supra, 361 S.W.2d at 63–64 [6]. Admittedly, some of the incidents of Bobby's employment are entirely consistent with a finding that he was an independent contractor, but that is often the case where the issue here presented is tendered. Horn v. Asphalt Products Corp., supra, 131 S.W. 2d at 872. We must reject the appellant's contention that Bobby was, as a matter of law, an independent contractor.

The appellants' further assignment of error is that Bobby's compensation rate should have been computed at $16.00 per week, the statutory minimum, rather than $38.26 per week, as originally fixed by the Division of Workmen's Compensation. The parties are agreed that the amount allowed for necessary medical expense, $2,464.55, is reasonable, and they agree that if Bobby's injury was compensable, and we hold that it was, he is entitled to 100 weeks of compensation for permanent partial disability

and 20 weeks for a healing period. The appellants simply say that there was no evidentiary basis upon which to compute Bobby's compensation rate at $38.26 per week; this requires a brief review of the evidence.

There was no testimony from the employer, by deposition or otherwise, indicating the general basis upon which drivers like Mr. Gass and Bobby were paid. Mr. White at one point indicated that a driver is paid $80.00 if he goes to Lima and $65.00 if he goes to Kosciusko, but the record is silent as to how these particular sums were fixed. It is clear that except for mechanical repairs, should any become necessary, the expense of the driver's trip was to be paid by the driver from the sum advanced, and that the expense incurred on a particular trip would vary. Mr. Gass' expense on this particular trip was $14.82 for transportation by commercial bus to Kosciusko, and $15.00, approximately, for incidentals. Bobby testified that he received $60.00 total payment, and that he incurred some expense but was unable to say how much. Bobby stated that he had bought some oil and gas but, when asked how much he had paid, said "I don't remember it's been too far back." Mr. Gass and Bobby had "had a little chat and everything, ate dinner then, gassed up," but, being pressed as to how much money he had left at the time of the accident, claimant candidly stated that he " * * * didn't remember nothing."

The Division of Workmen's Compensation considered that Bobby's earnings, after expenses, were $30.14; that since he was engaged parts of two days in transporting the bus, his average daily earning was $15.07; and, basing his annual earnings upon a 200-day year, as provided by Section 287.250(5), computed the compensation rate at $38.26 per week. The Industrial Commission, on review, considered that the employee had failed to prove his compensation rate, because there was no reasonable basis to assume that Bobby's expense was or should have been the same as Mr. Gass'

expense, and because the testimony of one witness would not be sufficient to establish " * * * the annual earnings [of] persons of the same class in the same employment * * *" so as to permit calculation under the provisions of Section 287.250(3). The Commission therefore fixed the compensation rate at $16.00 per week, the minimum allowed by law.

The trial court, upon its review, concluded that the compensation rate had been correctly computed by the Division and restored the award made by the Division, based on a compensation rate of $38.26 per week.

■ We have the view that the Industrial Commission's finding was correct. There is authority which holds that the testimony of one witness is not sufficient to permit calculation of the employee's wage basis under paragraph (3) of Section 287.-250, Fear v. Ebony Paint Mfg. Co., 238 Mo. App. 560, 569, 181 S.W.2d 559, 564 [9]; Werner v. Pioneer Cooperage Co., Mo.App., 155 S.W.2d 319, 322 [2], but there is nothing in the record to show that the Division fixed the compensation rate by the method provided in paragraph (3). Rather, it seems that the Division made its calculation by the method provided in paragraph (5) of Section 287.250. We have no fault to find with its *method* of calculation under that provision. *If* we assume that Bobby's expense was the same as Mr. Gass' expense, as the respondent says we should, then the compensation rate could properly be computed by dividing the total amount earned ($30.18) by the number of days actually worked (2), then multiplying the quotient by 200, as provided by Section 287.250(5), and dividing the product by 52 (weeks). This computation would yield the employee's average weekly earnings, Noland v. George Tatum Mercantile Co., Mo., 313 S.W.2d 633, 637–638; Werner v. Pioneer Cooperage Co., supra, 155 S.W.2d at 321–322; and see Goetz v. J. D. Carson Co., 357 Mo. 125, 133–134, 206 S.W.2d 530, 535–536 [13], and the average weekly earning, so calculated

and commuted to 66⅔% as required by Section 287.190(1), would be a sum very nearly that computed by the Division. On the other hand, the law requires, as both parties concede, that " * * * sums which the employer paid to the employee to cover any special expenses entailed on him by the nature of the employment * * *" be excluded from calculation of the earnings of the employee. Section 287.250(7); Reed v. Kansas City Wholesale Grocery Co., 236 Mo.App. 402, 410, 156 S.W.2d 747, 751–752 [3]. The Division's computation involved the assumption that Bobby's expense was necessarily the same as his father's, and this in the face of proof that the amount of the expense varied according to the conditions of the vehicle, and in spite of evidence that Bobby's trip was to be somewhat longer than that made by Mr. Gass. Bobby, of course, simply did not recall what his expense had been, and there was no testimony from the employer indicating why a driver was paid $60.00, $65.00, or some other amount. Upon careful examination of the record, we perceive no sound basis for the assumption that Bobby's expense was the same as his father's, and no " * * * fact [may] be found, nor a claim or defense, nor an award be based upon mere speculation, suspicion or conjecture." Shrock v. Wolfe Auto Sales, Inc., Mo., 358 S.W.2d 812, 815 [3]. At least, the award made by the Industrial Commission could reasonably have been made upon consideration of all the evidence, and it is not clearly contrary to the overwhelming weight of the evidence; we think its award, based on a compensation rate of $16.00 per week, must stand.

It therefore follows that the judgment of the circuit court should be modified by changing the amount of the award in accordance with this opinion and the finding of the Industrial Commission. It is so ordered, and, as modified, the judgment is affirmed.

RUARK, P. J., and STONE, J., concur.