Earl HARGIS, Respondent,

v.

UNITED TRANSPORTS, Inc., Appellant.

No. 7331.

Springfield Court of Appeals.

Missouri.

Jan. 3, 1955.

Robert E. Seiler, Joplin, for appellant.

William A. Moon, Springfield, for respondent.

McDOWELL, Presiding Judge.

This appeal is from a judgment of the Circuit Court of Greene County affirming an award of the Workmen's Compensation Commission of Missouri in favor of claimant and against United Transports, Inc., for $1,332.15.

Earl Hargis filed a claim for compensation before the Division of Workmen's Compensation, Department of Labor & Industrial Relations of Missouri. The claim lists both United Transports, Inc., and Auto Transports, Inc., as employer, each of which are self-insured. The date of the accident in which claimant was alleged to have been injured was May 21, 1951, and place of accident Highland, Illinois. The work claimant was doing at time of injury was unloading a cargo of automobiles being delivered for Auto Transports, Inc.

Defendants' answer admitted the accident. United Transports, Inc., denied, claimant was in its employment at time of accident. Auto Transports, Inc., admitted the employment as alleged. Both defendants denied contract of employment was made in Missouri and denied that the Workmen's Compensation Commission had jurisdiction and all other allegations of the petition.

The claim was heard by a referee on January 2, 1952. It was admitted that the accident occurred in Illinois; that the claim was filed within the time prescribed by law; that defendant United Transports, Inc., was operating under the Missouri Workmen's Compensation Law but Auto Transports, Inc., was not; that the injury actually took place May 18, 1951; that the average weekly wage was over $37.50; that claimant had received compensation under the Kansas Act from Auto Transports, Inc., of $167.85 paid for a period from May 18, 1951, to July 7, 1951, and medical aid in the sum of $166.40.

The referee, in his findings of fact and conclusions of law, stated:

"I further find that at the time of said accident, Earl Hargis, was not an employee of United Transports, Inc., but under the loaned servant doctrine was an employee of Auto Transports, Inc., the contract of employment being entered into in Missouri."

Claimant filed application for review before the full Commission. Upon review the judgment of the referee was reversed. Its findings stated:

"We further find that said Earl Hargis was an employee of United Transports, Inc., at the time of his accident under a contract of employment entered into in Missouri; that in accordance with Section 287.110.2, RSMo 1949 [V.A.M.S.], the Commission has jurisdiction in this cause.

"We further find that said Earl Hargis was not a borrowed employee of Auto Transports, Inc., at the time of his accident; that the evidence fails to show that Auto Transports, Inc., had the power to control the details of the work Earl Hargis was performing at the time of his accidental injury. The claim against Auto Transports, Inc., therefore, is hereby dismissed."

Defendant United Transports, Inc., appealed to the Circuit Court of Greene County, Missouri. Upon review the Circuit Court affirmed the judgment of the Industrial Commission. Defendant United Transports, Inc., appealed.

In our opinion we well refer to appellant as defendant and to respondent as claimant.

Defendant's first allegation of error is that the trial court erred in finding that claimant, at the time of the injury, was not a borrowed or loaned employee of Auto Transports, Inc.

Defendant contends the evidence showed, as a matter of law, claimant was a borrowed or loaned servant, acting as the employee of Auto Transports, Inc., at the time of accident.

To sustain this contention defendant cites the following authorities:

McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S.W.2d 67, 136 A.L.R. 516. This case involved an action for damages for personal injuries. The court, in its opinion, discussed the borrowed servant doctrine. On page 70 of 153 S.W. 2d the law is stated:

"* * * Our precedents have always ruled the question of who is the master or employer, to whom the rule of respondeat superior is to be applied, principally upon the test of control. In O'Brien v. Rindskopf, 334 Mo. 1233, 70 S.W.2d 1085, many cases in this and other jurisdictions were reviewed. This case has recently been approved in State ex rel. Chapman v. Shain [347 Mo. 308], 147 S.W.2d 457, 462, which quashed an opinion of the Kansas City Court of Appeals, Perdue v. Chapman [Mo.App.], 137 S.W.2d 483, found to be in conflict with its rulings, which were stated as follows:

" ' "While it is true one may be in the general service of another, and, nevertheless, with respect to particular work, may be the servant of another, who may become liable for his acts, yet to escape liability the original master *must surrender full control of the servant in the performance of said work.* The fact that the servant is partially under the control of the third person will not release the original master for any wrongful act done by the servant in the ordinary course of his employment. * * *" The question of who is the master and therefore responsible, for the negligent act of the servant is said to be determinable by who at the time has the right to control the acts of the servant causing the injury. * * *" " (See cases cited.).

Wittgrove v. Green Lea Dairies, Inc., Mo.App., 223 S.W.2d 114, 115, 116, states the law:

"The loaned or borrowed servant doctrine is simply a rule that an employee in the general employ of one master may, with his consent, be loaned to another master and become the servant or employee of the one to whom he has been loaned. The borrowing employer, however, must have exclusive control over the employee's work. Ellegood v. Brashear Freight Lines, 236 Mo.App. 971, 162 S.W.2d 628; McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S.W.2d 67, 136 A.L.R. 516; Nolan v. Joplin Transfer & Storage Co., 239 Mo.App. 915, 203 S.W.2d 740; Lee v. Oreon E. & R. G. Scott Realty Co., Mo. App., 96 S.W.2d 652."

Evans v. Farmers Mut. Hail Ins. Co., 240 Mo.App. 748, 217 S.W.2d 705, 709, cites with approval the law as declared in O'Brien v. Rindskopf, 334 Mo. 1233, 70 S.W.2d 1085. All of the cases cited by defendant as to the "borrowed servant doctrine" follow the law as above stated.

■ The law probably is more clearly stated in Ellegood v. Brashear Freight Lines, Inc., 236 Mo.App. 971, 162 S.W.2d 628, 632, 633:

"Under those decisions, it has been universally held that an employee in the general employment of one master may, with his consent, be loaned to another and become the servant of the person to whom he is loaned if the latter has exclusive control over the work. * * *

" ' "In determining whether, in a particular act, he is the servant of his original master or the person to whom he has been furnished the general test is whether the act is done in business of which the person is in control as a proprietor, so that he can at any time stop it or continue it, and determine the way in which it shall be done, not merely in reference to the result to be reached, but in reference to the method of reaching the result." * * *'

"From the foregoing cases we find the law to be that the relation of employer and employee exists as between a special employer to whom an employee is loaned and said employee whenever the following facts concur: (a) consent on the part of the employee to work for the special employer; (b) actual entry by the employee upon the work of and for the special master pursuant

to an express or implied contract so to do; (c) power of the special employer to control the details of the work to be performed and to determine how the work shall be done and whether it shall stop or continue."

Smith v. Grace, 237 Mo.App. 91, 159 S.W.2d 383, cited, adds nothing to the law as stated in the other authorities herein.

 Under Section 287.800 RSMo 1949, V.A.M.S. the Workmen's Compensation Law is to receive a liberal construction as to the rights of the employees. We review the whole record, including the legitimate inferences to be drawn therefrom, in the light most favorable to the award of the Commission, and then determine whether the Commission's finding, if supported by competent and substantial evidence, is contrary to the overwhelming weight of the evidence. Spradling v. International Shoe Co., Mo.Sup., 270 S.W.2d 28, 30, and cases cited therein; Woodward v. J. J. Grier Co., Mo.App., 270 S.W.2d 155.

The evidence is that defendants, United Transports, Inc., and Auto Transports, Inc., were separate corporations engaged in the transportation of new automobiles with their home offices in Oklahoma City, Oklahoma. United Transports, Inc., was a common carrier and operated under the Missouri Workmen's Compensation Law with terminals in Joplin and St. Louis, Missouri.

Auto Transports, Inc., was a contract hauler for General Motors with its terminal in Kansas City, Kansas. It did not operate under the Missouri Workmen's Compensation Law.

There was a general understanding between defendants that when Auto Transports, Inc., had more business than could be handled with its equipment it would lease equipment from United Transports, Inc., including both trucks and drivers, for transportation of cars. It was agreed that Auto Transports, Inc., would pay to defendant United Transports, Inc., for the use of each truck ten cents per loaded mile and for the use of the driver ten and one-fourth cents per loaded mile and the payment for both truck and driver was made to United Transports, Inc., who in turn paid the drivers.

In March, 1950, claimant was employed by United Transports, Inc., at its terminal in Joplin, Missouri, as a truck driver and this employment was not terminated until July, 1952. Claimant's compensation for work was ten and one-fourth cents per loaded mile.

May 17, 1951, the manager of Auto Transports, Inc., called United Transports, Inc., by telephone, and requested ten trucks and drivers to report at its terminal in Kansas City, Kansas, for use in delivering automobiles. The dispatcher for United Transports, Inc., sent claimant with its empty Chevrolet truck and trailer to Auto Transports' terminal to be leased to Auto Transports, Inc. Claimant had, on several other occasions, been sent by his employer to haul automobiles for defendant Auto Transports, Inc.

Claimant reported with defendant's empty truck and trailer at the terminal office of Auto Transports, Inc., in Kansas City, Kansas, and was, by the dispatcher of said terminal, presented with a travel order (which is in evidence as employer's exhibit 6) which he signed and was given the original. This order was dated May 17, 1951, together with freight bills for the automobiles he was to deliver. The order showed the driver's name as "E. Hargis (UT)". It directed him to drive unit No. 543B–522A from K. C. K. to East St. Louis and Highland, Ill., and there deliver cargo in accordance with shipping documents given. It provided that in case of accident the driver was to report promptly to office of Auto Transports, Kansas City, and, in case he encountered difficulty in delivering the cargo in accordance with shipping documents, he was to contact the Kansas City office. Some one in the office told claimant where to take the load and he was given a loading slip which he took to the General Motors yards and loaded his truck. Before he started, Auto Transports, Inc., gave

him two door signs which read, "Leased to Auto Transports" and directed him to post one sign on each door of his truck. The testimony is that he signed some other papers, none of which he read. He did not receive travel log from Auto Transports, Inc., at the time he departed with the load and claimant testified he was not sure that he ever filled out a travel log for this trip because of his injury.

The undisputed testimony is that claimant delivered, according to instructions, three of the automobiles in East St. Louis; the last automobile was in the process of being unloaded in Highland, Illinois, May 18, 1951, when claimant attempted to lower the window on the unloaded car and fell, injuring himself. (We will not state the testimony as to the injuries sustained because there is no issue as to injuries.)

There is in evidence some 15 pages of instructions and regulations which were in writing and which had been given to claimant by United Transports, Inc., when he entered its employment. These instructions completely covered, in detail, every act necessary for the proper driving of the employer's truck, the care of the equipment, the method of handling the truck while transporting automobiles, the method of fastening the different makes of automobiles on the trailer, the speed at which claimant must operate the truck, the method he must use in stopping or starting it, his personal appearance, the requirement that the automobiles being transported must be out of gear and the brakes released so as not to injure the equipment. These instructions and regulations specifically required claimant to not remove any part of the equipment while under his supervision and after the cargo was delivered claimant was to report back to the terminal of United Transports, Inc.

Auto Transports, Inc., so far as the evidence shows, did not issue any particular orders as to the details of this trip leased movement. From the evidence it could be inferred that Auto Transports, Inc., no more than indicated to claimant the route for the haul, the destination of the cars to be delivered, as was stated in the travel order and bills of sale, and what to do in case of accident or in case he was unable to deliver the cars according to instructions. There was no evidence tending to show that Auto Transports, Inc., attempted to give claimant detailed instructions as to the method and manner of operating his truck, the speed limit or any details whatsoever in the carrying out of his duties in delivering these cars.

In Stroud v. Zuzich, Mo.Sup., 271 S.W. 2d 549, 555, the "borrowed servant doctrine" was discussed. On page 555 of the opinion the court made the following statement:

"Byers did not, so far as the evidence shows, issue any particular verbal orders as to the details of the trip-lease movement. So far as the evidence shows, it could be inferred Byers no more than indicated to Stroud the route for the haul and the destination of the freight; indeed, the freight to be hauled and the destination were stated in the trip-lease agreement. There was no evidence tending to show that Byers undertook to give Stroud detailed instructions or orders, for example, instructions or orders as to the manner or method of operating the combination vehicle, or undertook to prescribe or limit its speed. There being no orders (other than at most as to route and destination as would be necessary to enable the performance of the trip-lease agreement) shown to have been issued by Byers and hence no shown acceptance and obedience to such orders by Stroud, there were no bases for the inference that Stroud had consented to a transfer of his employment as in the Brashear case, supra."

Under the evidence it is admitted that at the time of the injury herein, claimant was in the general employment of United Transports, Inc., and had been since March, 1951; that he was instructed to return to defendant's terminal when the automobiles were delivered at destination. Therefore, the contract of employment was made in Missouri and subject to the jurisdiction of

the Workmen's Compensation Commission unless under the borrowed servant's law claimant, at the time of injury, was in the employment and under the complete control and direction of Auto Transports, Inc.

We hold that the evidence substantially supports the findings of the Industrial Commission that Earl Hargis, claimant was not a borrowed employee of Auto Transports, Inc., at the time of his injury; that the evidence fails to show that Auto Transports, Inc., had the power to control the detail of the work Earl Hargis was performing at the time of his accidental injury. We find against defendant on his first allegation of error.

Defendant's second allegation of error complains of the finding of the trial court that claimant's contract of employment was made in Missouri. It is contended under this allegation that the evidence shows as a matter of law that the contract of employment under which claimant was working, when injured in Illinois, was made at Auto Transports' terminal in Kansas City, Kansas; that the burden is on claimant to show contract was made in Missouri.

To sustain this contention defendant cites Rendleman v. East Texas Motor Freight Lines, 355 Mo. 287, 196 S.W.2d 171.

In this case the full Commission found the contract of employment of claimant was made in Illinois and that the accident occurred in Illinois. We will not state the facts in the case but they justify the finding of the Commission and are entirely different from the facts in the case at bar. The court made the following finding, 196 S.W.2d on page 173 of the opinion:

"But, the Commission's finding and award in favor of the respondents is 'upon the whole evidence.' Doughton v. Marland Refining Co., 331 Mo. 280, 289, 53 S.W.2d 236, 240. Of course, if there is 'not sufficient competent evidence in the record to warrant the making of the award', Mo.R.S.A. § 3732(4) [V.A.M.S. § 287.490, subd. 1(4)], or, to put it another way, if there is no evi-

dence to support the finding of fact made by the Commission, then the fact found does not support the award and the Commission's ruling could not stand. Sawtell v. Stern Bros. & Co., 226 Mo.App. 485, 490, 44 S.W.2d 264, 267. The Commission's finding, however, absent fraud, is conclusive upon appeal if supported by sufficient competent evidence. Mo.R.S.A. § 3732. And, in passing upon the sufficiency of the evidence it must be kept in mind that we view the record in the light most favorable to the finding and disregard any evidence which might support a different finding than the one the Commission made. * * *"

Here, the court found against claimant and it stated that it did so because the facts were not uncontradicted and the court stated that the Commission might have drawn other inferences, hence the court could not review the record as it might have done had the Commission found for claimant, citing Deister v. Thompson, 352 Mo. 871, 876, 180 S.W.2d 15, 18. The court, however, 196 S.W.2d on page 174 of its opinion states the law thus:

"The general test of where, as a fact, the relationship (Pruitt v. Harker, 328 Mo. 1200, 43 S.W.2d 769) of employee and employer was created or entered into is a problem of the intention of the parties (Overcash v. Yellow Transit Co., 352 Mo. 993, 180 S.W.2d 678) as evidence by their acts and conduct, the nature of the business, the situation of the parties and all the facts and circumstances. * * *"

This case does not support defendant's contention. Under defendant's first allegation of error we affirmed the findings of the Commission that claimant was at time of injury in the employment of defendant. Having so found, the evidence shows that claimant's contract of employment with defendant was made in Joplin, Missouri. We find against defendant on this assignment of error.

The third assignment of error contends that the overwhelming weight of the evidence is contrary to the findings of the

Industrial Commission and that the Commission could not reasonably have reached the result upon consideration of all of the evidence.

We agree with defendant's contention that there must be probative or substantial evidence to support the finding of the Commission. In our opinion we have cited the last controlling decisions of the Supreme Court as to what the duty of this court is in passing upon the issues herein involved. We hold there was substantial evidence to support the findings of the Commission and the judgment of the Circuit Court in affirming the same. We find there is no merit in this contention.

Judgment affirmed.

STONE, J., concurs.