**Donald L. DICKHAUT, Deceased, Lois J. Dickhaut, et al., Dependents, Plaintiffs-Appellants,**

**v.**

**BILYEU REFRIGERATED TRANSPORT CORPORATION, Employer, Great American Insurance Company, Insurer, Defendants-Appellants,**

**and**

**Harold E. Richardson, Inc., Employer, Michigan Mutual Liability Insurance Company, Insurer, Respondents.**

**No. 53900.**

Supreme Court of Missouri, Division No. 2.

April 14, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied May 12, 1969.

Wayne C. Smith, Jr., and William C. Bland, Springfield, for plaintiffs-appellants.

John R. Gibson, John E. Morrison, Morrison, Hecker, Cozad, Morrison & Curtis, Kansas City, for defendants-appellants.

Paul D. Rittershouse, Daniel, Clampett, Ellis, Rittershouse & Dalton, Springfield, for defendants-respondents.

BARRETT, Commissioner.

On October 11, 1965, Donald L. Dickhaut was killed when the tractor-trailer unit he was operating overturned in Wolf Creek Pass, Mineral County, Colorado. He was originally employed by Richardson Trucks, Omaha, Nebraska, but Richardson closed its Omaha operation in April 1965 and moved its business of leasing trucks to Springfield. Dickhaut and four other Nebraska drivers, fully aware of the situation and the nature of their future employment, elected to move to Springfield. At the time of his death Dickhaut was on a trip for Bilyeu Refrigerated Transport Corporation of Springfield, Missouri. Bilyeu had leased the equipment from Richardson as it often did, Richardson at one time had leased as many as 40 trucks to Bilyeu. In October Dickhaut was dispatched to Wichita, Kansas, on behalf of Bilyeu and delivered his cargo in Atlanta, Georgia. There he called Bilyeu's dispatcher in Springfield and was directed to pick up a cargo of dressed poultry at Gainesville, Georgia, to be delivered at six specified places in Colorado. He had made the first "drop" in Colorado and was enroute to Durango when his unit overturned and he was killed.

Dickhaut's widow, Lois, and their four children, ages seven to four, made claim for the death benefits under the Missouri Workmen's Compensation Act. They designated as employers both Bilyeu Refrigerated Transport Corporation and Richardson Incorporated. The referee and the Industrial Commission on review found and made an award against Bilyeu only for death benefits totaling $17,150.00. The award was affirmed on appeal to the Circuit Court of Greene County and Bilyeu through its insurer, Great American Insurance Company, has appealed to this court. In this situation no compensation has been paid the widow and dependent children in almost four years and as has

been noted "The conflict of interest becomes one not between employer and employee (who is assured of recovering from someone) but between two employers and their insurance carriers." 1 Larson, Workmen's Compensation, p. 810. Bilyeu's insurance carrier contends in any event that Richardson and its insurer, Michigan Mutual Liability Company, "should be liable for half of the award" on the theory of "joint employer" and it is only by reason of their additional claim that Richardson should be liable "for all compensation" that a sum of money within this court's jurisdiction is involved. Gennari v. Norwood Hills Corporation, Mo., 322 S.W.2d 718.

■ The appellants' attack is twofold, one that even after its lease Richardson exercised "continuing control and the right to control the work of Dickhaut and was the employer of Dickhaut" and therefore liable for all death benefits due his widow and children and, two, "that Bilyeu was at most a joint employer with Richardson" who should be liable for half of the award. Both of these attacks are based upon the assertion that the award and judgment "are contrary to the overwhelming weight of the evidence on the whole record." This brings into forceful play the fundamental rule to which more than lip service must be paid that since the 1945 Constitution (Art. V, Sec. 22, V.A.M.S.) this court may not substitute its "judgment on the evidence for that of the Commission. But we are authorized to decide (only) whether the Commission could have reasonably made its findings and reached its result, upon a consideration of all the evidence before it, and to set aside its decision (only) if clearly contrary to the overwhelming weight of the evidence." Stroud v. Zuzich, Mo., 271 S.W.2d 549, 550–551, a case in which the general employer (here Richardson) rather than the special (here Bilyeu) was held liable for the death benefits due a truck driver's dependents under the Missouri compensation law. See also explicative of this rule: Wood v. Wagner Electric Corporation, 355

Mo. 670, 197 S.W.2d 647, and Seabaugh's Dependents v. Garver Lumber Mfg. Co., 355 Mo. 1153, 200 S.W.2d 55 and RSMo 1959, § 287.490, V.A.M.S. One of the foreign cases upon which Bilyeu's insurer relies to sustain its claim of some liability upon the general employer is in fact based upon an application of this rule: "the commission's finding of fact that Michicago had not relinquished its control over deceased in the operation in which he was engaged when killed is amply supported by the evidence." Rantis v. Michicago Motor Exp., 333 Mich. 73, 78, 52 N.W.2d 603, 605.

Within this delimited scope of review the disposition of this appeal becomes a relatively simple problem of demonstration and it is not necessary to encumber this opinion with all the minutia of the record before the referee. In addition to the noted introductory facts it only need be said that Richardson had no I.C.C. permits and of course no lawful right to transport poultry or other cargo in interstate commerce. On employee's driving trucks leased to Bilyeu it carried no workmen's compensation insurance, contract drivers of leased units were "carried on the same Workmen's Compensation policy by Bilyeu as was their regular drivers" and Bilyeu paid the premiums. The subject matter of this particular haul, the poultry, was from Bilyeu's sources or clients—not Richardson's. While Richardson maintained an agent in Bilyeu's office, a driver supervisor, he testified that once "I dispatch him to Bilyeu, he is under Bilyeu's control, the dispatcher's control, and he could tell him anything, and anything that he told him, that is what he was supposed to do." There is of course evidence from which the inference is possible that both Bilyeu and Richardson were Dickhaut's employers, a problem not necessary to the determination of this appeal, and these are the circumstances pointed to by Bilyeu's insurer but upon this record for death benefits the primary business of Richardson was truck leasing while the primary business of Bilyeu was the transportation of cargo in interstate commerce.

In addition to the oral testimony there was a written lease between Richardson and Bilyeu. And as with the oral testimony it is not necessary to set forth in detail the terms of the lease, this and similar leases as well as the facts testified to by the witnesses are set forth in full in several of the cited cases and of course for those interested in the specific details the record in this case is always available. For the illustrative purposes of this appeal it is sufficient to note that the lessee, Bilyeu, assumed responsibility of protecting the public against losses "for automobile injury and property damage and cargo," it agreed to "furnish Workmen's Compensation Insurance for Lessor, his employees or agents for injury from any accident or occupational disease arising out of the use of said equipment." The lease recites that "It is understood and agreed that the leased equipment under this arrangement is in the exclusive possession, control, and use of the authorized carrier Lessee (Bilyeu) and that the Lessee assumes full responsibility in respect to the equipment it is operating, to the public, the shipper, and all State and Federal regulatory bodies," and one other clause: "During the term of this agreement and the use of said equipment by Lessor, the drivers and other employees of Lessor used in connection with this agreement will be under the full control, direction and supervision of Lessee, or its designated agents."

In these circumstances it is unnecessary to analyze in detail the seven bits of evidence which the appellant claims distinguishes this case from Patton v. Patton, Mo., 308 S.W.2d 739, and other cases and demonstrates that the general employer (Richardson) had not "relinquished complete control" because "this case * * * contains strong evidence showing continuing control and a continuing employment relationship between Richardson Trucks, Inc., and the deceased, Donald Dickhaut." As to these very elements relied on by appellant the Patton case says that Tri-State there "*would apply the rule* that the general employer must resign full control and the special employer must have sole and exclusive control *too broadly*." In that case the facts and circumstances while set out in greater detail are all but identical with this record. There the court considers every circumstance and illustrates every point urged here but of immediate interest, in addition to saying that the appellants would apply the rule "too broadly," the court made this general observation: "Cases holding that there was substantial evidence to sustain a verdict or an award of compensation against the general employer, as in some of Tri-State's citations, are not determinative here. In other cases this fact issue has resulted in holding the borrowed servant with respect to the particular act was the servant of the special employer." While a suit for damages involving a Manpower, Inc., employee, Wright v. Habco, Inc., Mo., 419 S.W.2d 34, follows Patton v. Patton and is in principle controlling here. Furthermore, that case distinguishes the cases relied on by the appellant, particularly Schepp v. Mid City Trucking Co., Mo.App., 291 S.W.2d 633, and there is no point in again distinguishing the case. Other truck driver lease cases plainly supporting the finding of the referee, the commission and the court's affirmance of the award are Feldmann v. Dot Delivery Service, Mo.App., 425 S.W. 2d 491, and Ellegood v. Brashear Freight Lines, Inc., 236 Mo.App. 971, 162 S.W. 2d 628. The governing principle of "servant loaned or hired to another" (58 Am. Jur. "Workmen's Compensation" Sec. 343, p. 812) is summarized in this applicable language: "When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if (a) the employee has made a contract of hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has the right to control the details of the work." 1 Larson, Workmen's Compensation, Sec. 48, p. 805.

58

Maltz v. Jackoway-Katz Cap Co., 336 Mo. 1000, 82 S.W.2d 909, was truly an instance as a matter of law of joint employers, a traveling salesman soliciting orders for hats for one concern and caps for another. The question there was whether the salesman was an independent contractor (and not under the compensation act) or an employee of both and his death compensable under the workmen's compensation law. In connection with the Maltz case it has been pointed out that there was no conflict in the evidence, the facts were undisputed and did not admit of contradictory inferences and so it was declared as a matter of law that he was not an independent contractor. At the same time a caveat was issued that since the date of that case, 1935, "there has been a change in the scope of review as well as to the effect to be attributed to findings of fact by the commission." Shrock v. Wolfe Auto Sales, Inc., Mo., 358 S.W.2d 812.

In short, contrary to the appellants' basic claim that "the award and judgment are contrary to the overwhelming weight of the evidence on the whole record," the award is indeed supported and another or different finding and award may not be made as a matter of law. As another "lent employee" opinion observed: "the commission, under the evidence herein, reasonably could have made the findings that it made and could have reached the result that it reached. Whether or not, under the evidence, it could have made different findings and reached a different result is immaterial. We cannot substitute our opinion for that of the commission, if we had a different opinion." Pulliam v. Home Building Contractors, Inc., Mo.App., 363 S. W.2d 48, 50.

Accordingly, the judgment is affirmed.

STOCKARD, C., concurs.

PRITCHARD, C., not sitting.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.