Wanda BARGEON and Pamela Bargeon, a Minor, Plaintiffs-Appellants,

v.

PERISHABLE DISTRIBUTING COMPANY and Western Casualty & Surety Company, Defendants-Appellants,

and

John B. Morrell & Company and Liberty Mutual Insurance Company, Defendants-Respondents.

No. 55300.

Supreme Court of Missouri, Division No. 1.

April 12, 1971.

**572**

Floyd McBride, Paul J. Simon, St. Louis, Attorneys for plaintiffs-appellants.

Robert R. Schwarz, Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, for Perishable Distributing Co. and Western Casualty & Surety Co.

Evans & Dixon, John R. Dixon, St. Louis, for John B. Morrell & Co. and Liberty Mutual Ins. Co.

WELBORN, Commissioner.

This is another of the frequently encountered cases involving the status, for purposes of Workmen's Compensation liability, of a truck driver whose employment related to more than one potential employer. The driver, Patrick J. Bargeon, was a general employee of Perishable Distributing Company. At the time of the accident which resulted in his death, he was delivering meat of John B. Morrell & Company, driving a truck leased to Morrell by a truck-leasing firm. The Workmen's Compensation referee who heard the claim found that Bargeon was the employee of Morrell at the time of the accident. The Industrial Commission reversed the finding of the referee and held that Perishable was the employer. The decedent's dependents and Perishable appealed the Commission's findings to the circuit court. The circuit court affirmed the Commission's findings. Perishable and its insurer seek to be relieved of liability for the award of $17,150. The dependents seek to have Perishable and Morrell held liable as joint employers.

Perishable is in the business of delivering meat and other perishables in the St. Louis area. Morrell is one of Perishable's customers. Some deliveries are made in Perishable trucks driven by Perishable's drivers. Because of limitations upon Perishable's operations, some deliveries in Illinois were in Perishable trucks with Perishable's drivers, under lease to Slater Truck Line, whose authority included the Illinois points. Some Morrell customers were located beyond either Perishable's or Slater's authority. Delivery to these customers was made by Morrell itself, by its driver who operated a truck leased by Morrell from Ryder Rental, Inc.

Perishable had delivered for Morrell since 1964. In August, 1966, Peterson who drove the truck leased by Morrell was to go on vacation. Koppel, Morrell's district sales manager, called Keller, president of Perishable, and requested Keller to supply a driver between August 22 and 26, when Peterson would be on vacation. Morrell's delivery operation involving use of its own leased truck took three days each week in Illinois and two days in Missouri. On Monday, August 22, 1966, when Bargeon came to work at Perishable, Keller told him to load the Morrell truck and make the deliveries in Illinois, south of Belleville. Keller chose Bargeon because he was familiar with the area and made Illinois deliveries for Perishable under the Slater authority. On Tuesday, August 23, and Wednesday, August 24, the Morrell truck made deliveries in Missouri, south of St. Louis. Keller selected another Perishable driver, McCart, for this work, because of his familiarity with the area.

On Thursday, August 25, Bargeon was again told to make deliveries using the Morrell truck in Illinois. At around 4:30 P.M. on that date while in the course of his work, the truck driven by Bargeon was struck by a train and he was killed.

Upon claim for compensation being made because of Bargeon's death, a referee of the Division of Workmen's Compensation found that Bargeon was in the special employment of Morrell at the time of his death. The Industrial Commission re-

versed the finding of the referee with its findings, as follow:

"(1) That Perishable was the regular employer of Patrick J. Bargeon;

"(2) That Patrick J. Bargeon was on and about the usual and customary business of his regular employer, Perishable, when he sustained the accident resulting in his death;

"(3) That Patrick J. Bargeon did not consent to work for Morrell, but instead continued in the usual and customary business of his regular employer in his usual and customary capacity as a driver;

"(4) That there was no contract of employment, either express or implied, between Morrell and Patrick J. Bargeon;

"(5) That Perishable had the right to control the details of the work to be performed by Patrick J. Bargeon; and,

"(6) That Perishable had the right to determine whether the work that Patrick J. Bargeon was doing should stop or continue."

The circuit court affirmed the findings and award of the Commission and Perishable and its insurer, along with the dependents of the deceased employee, have appealed.

There is no necessity for lengthy delineation of the rules which govern the scope of judicial review of the order of the Commission. Those rules are set out at length, along with full citation of supporting authority, in Brown v. Missouri Lumber Transports, Inc., Mo.Sup., 456 S.W.2d 306, 307–308. Basically the review function is limited to a determination of whether or not the Commission's findings are supported by competent and substantial evidence on the entire record.

There was adequate evidence to support the finding that Bargeon was the regular employee of Perishable. He had worked for Perishable for three years as a truck driver. He regularly drove for Perishable, making deliveries in Illinois within the limits of either Perishable's or Slater's authority. His wages were paid by Perishable.

■ As for the finding that Bargeon was on the regular business of Perishable at the time of his death, Perishable's business was the delivery of meat and other perishable products. Morrell was a regular customer of Perishable. According to Keller, when he was asked to supply a driver to replace Peterson, he did so because "I had to take care of my account." The fact that Perishable's own truck, because of permit limitations, did not operate in the area where Bargeon was making deliveries at the time of his death does not negative the fact that what he was doing at that time was the regular business of Perishable, delivering meat for customers, including Morrell.

As for the finding that Bargeon did not consent to work for Morrell, Bargeon had no dealings whatsoever with any Morrell employee. He simply followed Keller's directions to take the Morrell truck and make the deliveries ordinarily made by Morrell's employee. Bargeon was aware when he went to work on Thursday that he would be driving the Morrell truck because he made a remark to that effect to his wife before leaving home. However, if that knowledge and the subsequent action of Bargeon is to rise to the level of implied consent to change in his employment status, there would be required further knowledge by Bargeon of the relationship between Perishable and Peterson, the usual driver of the Morrell truck. Insofar as appears, the Morrell truck regularly picked up shipments at Perishable's terminal, along with Perishable's regular trucks and Perishable trucks with the Slater name. Bargeon drove one of the latter ordinarily without being given reason to believe that on that account he became a Slater employee. His mere changing, at the direction of his regular boss, to take the truck with Morrell's name on it and his compliance with that direction would not

be the basis for an inference of consent to change in employers by Bargeon.

■ On the finding that there was no contract of employment between Bargeon and Morrell, the evidence showed no dealings whatsoever between Bargeon and an employee of Morrell. There was no arrangement between Bargeon and Morrell for Morrell's paying Bargeon's wages for the time that he drove the Morrell truck. In fact, there were no arrangements between Morrell and Keller about payment for Bargeon's services. Keller said, "I didn't know how I was going to bill and I was going to bill it right." On previous occasions when Perishable had supplied a driver for the Morrell truck, Perishable had billed Morrell for the driver's regular and overtime pay, plus 13½% to cover social security, insurance, union fringe benefits, etc. The charge was included with the regular weekly statement Perishable sent Morrell for handling and delivering Morrell's meat. Koppel stated that he expected the charge for services of the driver supplied in August, 1966, to be made in similar fashion. This evidence negatived the existence of a contract of employment between Bargeon and Morrell and amply supports the Commission's findings on this element.

■ The perhaps decisive finding of the Commission was that Perishable had the right to control the details of the work performed by Bargeon. This finding entails a recitation in some detail of the method of operation of Morrell and Perishable. Morrell's salesmen took orders for meat in the St. Louis area. The orders were forwarded to Morrell's plant in Iowa. There the orders were filled and the meat delivered to Perishable's dock in St. Louis. Perishable's employees unloaded the meat. Based on invoices and delivery receipts accompanying the shipment, the meat would be separated for delivery in either Perishable's trucks or the Morrell truck. The drivers, using the invoices which showed the customers' names and addresses, then loaded the meat on their trucks according to the route they intended to follow in making deliveries. Other than the direction by Keller to take the Morrell truck, there was no direction to Bargeon on the loading of his truck or the route he was to follow. He depended upon the invoices from Morrell to make up his load and made his own determination of the route he would follow. No Morrell employee was at the Perishable dock giving directions or instructions. According to Keller, he was the one who decided that Bargeon should take the run; he could have selected any other driver; he could have taken Bargeon off the run; if Morrell was dissatisfied with Bargeon, they would have to have effected a change by going through Perishable because only Keller could take him off the truck.

Keller's testimony amply supports the Commission's findings. Appellant points to the testimony of Koppel which might have supported a contrary finding. It is not the province of this Court on review to reject Keller's testimony in favor of Koppel's; that determination was for the Industrial Commission.

The testimony of Keller as it related to the matter of control also supports the finding of the Commission that Perishable had the right to determine whether the work that Bargeon was doing in operation of the Morrell truck should stop or continue. As above pointed out, Keller, when asked whether Morrell could have taken Bargeon off the truck, replied: "They would have to call me. I would have to take him off the truck."

The Commission's findings support its ultimate conclusion that Bargeon's death arose out of and in the course of his employment by Perishable. With support for the Commission's findings in the record before us, that should end our review on this appeal. There can be no doubt that, under numerous decisions, factual support for the findings such as the Commission made here provide a more than adequate basis

for resolution of the issue of liability for Workmen's Compensation. See Schepp v. Mid City Trucking Co., Mo.App., 291 S. W.2d 633; Hargis v. United Transports, Mo.App., 274 S.W.2d 339; Stroud v. Zuzich, Mo.Sup., 271 S.W.2d 549; Brown v. Missouri Lumber Transports, Inc., Mo. Sup., 456 S.W.2d 306. No benefit would result from an extensive comparison of the facts of those cases, in which the general employer was found liable to pay Workmen's Compensation benefits. In each of those cases, as in the present case, the relationship of the claimant to the alleged special employer was a temporary, irregular one. In such a situation, there is much less likely to be a relinquishment of control by the general employer, a consent to change of employer by the employee, or a contract of employment between the employee and the alleged special employer. These are the ultimate legally significant factors, determinative of the relationship. Schepp v. Mid City Trucking Co., supra, 291 S.W.2d 640 [2]; Hargis v. United Transports, supra, 274 S.W.2d 341–342 [1]; Stroud v. Zuzich, supra, 271 S.W.2d 554.

By contrast, in the case upon which the appellant Perishable primarily relies, Feldmann v. Dot Delivery Service, Mo.App., 425 S.W.2d 491, the employee had hauled for the special employer for five years. He received no orders from his general employer who told him to do whatever the special employer directed. Contrary to Keller's testimony here, the general employer disclaimed any control over the employee or anything about his work for the special employer.

Dickhaut v. Bilyeu Refrigerated Transport Corp. et al., Mo.Sup., 441 S.W.2d 54, a truck-driver leasing situation in which the special employer-lessee was held liable for Workmen's Compensation benefits upon the death of a driver, involved a continuous, rather large scale course of dealings between the general and special employer and a written lease under which the special employer was given full control,

direction and supervision of the trucks and drivers of the lessor-general employer. Those, with other factors not here present, were found to support the Commission's finding of liability against the special employer.

Wright v. Habco, Inc., Mo.Sup., 419 S. W.2d 34, a common law action by an employee against the special employer in which the former's rights under the Workmen's Compensation Act were held to be his exclusive remedy because an employer-employee relationship existed, involved an employee furnished by Manpower, Inc., who had been at the work of his special employer for about two months and who took his orders from his special employer. That case affords no basis for disregarding the findings of the Commission in this case nor for determination that, as a matter of law, the conclusion of the Commission was erroneous; nor do any of the other cases cited and relied upon by appellant. There is no occasion to protract the opinion by further discussion and distinction of such cases.

■ As for the appellants-claimants' contention that Morrell and Perishable should be held liable jointly, the findings of the Commission, adequately supported as above demonstrated, preclude such a conclusion. The Commission rejected joint liability and there is no reason to disturb its conclusion. Clearly, this is not the type of situation in which joint liability has been sustained. In the case of Equity Mutual Ins. Co. v. Kroger Grocery & Baking Co., 238 Mo.App. 4, 175 S.W.2d 153, cited by appellants-claimants, the joint liability there found involved a night watchman employed by sixty corporations. There is no occasion to consider in what other circumstances joint liability may arise. The primary determination is for the Industrial Commission, which here found facts inconsistent with joint liability. Its findings are supported by substantial and competent evidence on the entire record and our opinion is not to be substituted for that of the Commission. Dickhaut v. Bilyeu Refriger-

ated Transport Corp., supra, 441 S.W.2d 58[3].

Judgment affirmed.

HOUSER and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.